UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HYUNHUY NAM,<br><br>       Plaintiff,<br><br>   v.<br><br>PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS; HYUN CHO; JINHO JO; and DAEYONG CHUNG,<br><br>       Defendants. | Case No.: 1:21-cv-06165-AJN<br><br>CIVIL ACTION |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12 (b)(6)**

On the brief: Joshua S. Lim, Esq.
       Nicholas J. DuBois, Esq.
       Sean S. Kwak, Esq.
       Power J. Chen, Esq.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

I.   INTRODUCTORY STATEMENT ...................................................................................... 1

II.  LEGAL ARGUMENT .......................................................................................................... 5

    A.   Plaintiff's Declaration Cannot Cure Defective Complaint. .............................................. 5

    B.   Plaintiff's Selected Authorities Fail to Support a Commercial Exception. ...................... 7

    C.   Weight of Authorities Strongly Rejects a Drivers' Commercial Exception. .................... 9

    D.   The Parties' Settlement Agreement Is Effective to Bar Suit. .......................................... 11

III. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

Adler v. Aztech Chas. P. Young Co., 807 F. Supp. 1068 (S.D.N.Y. 1992) ................................... 5

Ancile Inv. Co. v. Archer Daniels Midland Co., 992 F. Supp. 2d 316 (S.D.N.Y. 2014) ............. 13

Bardales v. Consulate Gen. of Peru in N.Y., 490 F. Supp. 3d 696 (S.D.N.Y. 2020) ......... 9, 10, 11

Conley v. Gibson, 355 U.S. 41 (1957) ............................................................................................ 6

DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54 (S.D.N.Y. 2010) ........................................... 6

Figueroa v. Ministry for Foreign Affairs of Sweden, 222 F. Supp. 3d 304 (S.D.N.Y. 2016) ...... 10

Goodman v. Port Auth. of N.Y. & N.J., 850 F.Supp.2d 363 (S.D.N.Y. 2012) .............................. 6

Hijazi v. Permanent Mission of Saudi Arabia to UN, 689 F. Supp. 2d 669, 674–75
(S.D.N.Y. 2010) ...................................................................................................................... 10, 11

Holden v. Canadian Consulate, 92 F.3d 918 (9th Cir. 1996) ..................................................... 7, 8

In re Oneida, Ltd., 400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom.
Peter J. Solomon Co., L.P. v. Oneida Ltd., No. 09-cv-2229 (DC), 2010 WL 234827
(S.D.N.Y. Jan. 22, 2010) ............................................................................................................... 13

Kato v. Ishihara, 360 F.3d 106 (2d Cir. 2004) .......................................................................... 8, 10

Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991) ........................................................... 5

Laba v. Carey, 29 N.Y.2d 302 (1971) .......................................................................................... 13

Lipper Holdings, LLC v. Trident Holdings, LLC, 1 A.D.3d 170
(N.Y. 1st Dep't App. Div. 2003) .................................................................................................. 13

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007) ............................................. 6

Morlee Sales Corp. v. Manufacturers Trust Co., 9 N.Y.2d 16 (1961) ......................................... 13

New York v. Mountain Tobacco Co., 55 F.Supp.3d 301 (E.D.N.Y. 2014) .................................... 6

Ocean Transp., Inc. v. American Philippine Fiber Indus., 743 F.2d 85 (2d Cir. 1984) ............... 13

Old Colony Trust Co. v. Omaha, 230 U.S. 100 (1913) ............................................................... 13

Raleigh Assocs. v. Henry, 302 N.Y. 467 (1951) ........................................................................... 13

Slatt v. Slatt, 64 N.Y.2d 966 (1985) ........................................................................................... 13

Swarna v. Al-Awadi, 622 F.3d 123 (2d Cir. 2010) ....................................................................... 8

Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002) ................................................................... 6

Telebrands Corp. v. Del Labs., Inc., 719 F.Supp.2d 283 (S.D.N.Y. 2010) .................................. 6

**Statutes**

28 U.S.C. § 1603(e) ..................................................................................................................... 4

28 U.S.C. §§ 1602, et seq............................................................................................................ 1

**Other Authorities**

H. Rep. No. 94–1487, 94th Cong., 2d Sess.,
reprinted at 1976 U.S. Code Cong. & Ad. News 6604 ................................................................ 7

**Rules**

Fed. R. Civ. P. 44.1 .................................................................................................................... 13

The Permanent Mission of the Republic of Korea to the United Nations (hereinafter, the "Mission") and three of its diplomats, Hyon Cho, Jinho Jo, and Daeyong Chung (collectively, "Diplomats") (Diplomats and Mission, collectively, "Defendants"), by and through their counsel, the law offices of Kim, Cho & Lim, LLC, hereby respectfully submit this reply memorandum of law in further support of their motion for to dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6). Defendants filed the moving papers on September 30, 2021 and Plaintiff filed his opposition papers on October 26, 2021.

## I. INTRODUCTORY STATEMENT

The defendants Permanent Mission of the Republic of Korea to the United Nations (hereinafter, the "Mission") and three of its diplomats, Hyon Cho, Jinho Jo, and Daeyong Chung (collectively, "Diplomats") (Diplomats and Mission, collectively, "Defendants") moved under Rule 12 of the Federal Rules of Civil Procedure to dismiss (DE24) the Complaint dated July 19, 2021 (DE1) filed by the plaintiff Hyunhuy Nam ("Nam' or "Plaintiff") under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, to -11, and other legal theories. Under Rule 15(a)(1), Plaintiff was free to amend his Complaint without leave and to supply any additional allegations he may deem necessary or advisable to support his causes of action, and administratively terminate Defendants' motion.

However, pursuant to this Court's individual practices, Plaintiff affirmatively forewent his opportunity to amend his Complaint. See Letter from Diana Seo to Court dated October 6, 2021 (DE26) (advising Plaintiff's intention to rely on his original pleading). On October 26th, Plaintiff submitted a 47-paragraph Declaration of Hyunhuy Nam in Opposition of [Sic] Defendants' Motion to Dismiss (DE32) ("Nam Decl.") dated October 23, 2021, with exhibits (DE32-1 to -3) supplementing the allegations of his Complaint; plus a Memorandum of Law in Opposition to

1

Defendants' Motion to Dismiss (DE33) ("Opp. Br."), dated Oct. 25, 2021, largely repeating those allegations and leaving most of Defendants' key authorities unaddressed, in particular those pertaining to chauffeurs hired to serve a particular diplomatic post. Plaintiff does concede having been assigned an "official vehicle" and small office. Nam Decl. ¶ 8.

Unfazed by the holdings of those authorities as to the nature of the job, not the title, Plaintiff submits as **Exhibit A** "a true and correct copy of Permanent [sic] Mission's Employee Directory." Nam Decl. ¶ 7. The document does not appear to be a business or public record under Fed. R. Evid. 803(6) or (8), nor authenticated under Rules 901(a), 902(3), or (12), so its admissibility is doubtful at best.

If allowed, the heavily redacted document bears no such title (despite Plaintiff's capitalization) and is not dated. It appears to be some kind of informal contact or telephone number list divided for convenience with the headings "Diplomatic Staff [35]" and "Non-Diplomatic Staff [28]" (brackets in original). Plaintiff ostensibly submits **Exhibit A** (DE32-1) to display Mr. Nam's line-entry below the latter heading to prove that "Plaintiff's actual employment and the duties Plaintiff performed were commercial, rather than governmental [,]" Opp. Br. at 5, with no further foundation. Where Plaintiff's contact information may appear on a cheat sheet is hardly dispositive of commercial activities.

Plaintiff's **Exhibit B** appears on the docket as "# 2 Exhibit B_Revised Time Record". The three pages are handwritten in Hangul and untranslated, so cannot be considered on that basis alone.[1] Plaintiff's Declaration asserts these reflect overtime hours that "Minister Lee" allegedly "required [Plaintiff] to change the time to reflect reduced number of hours." Nam Decl. ¶ 35. These

---

[1] See Sicom S.P.A. v. TRS Inc., 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016) ("[B]ear in mind that foreign-language documents . . . cannot be reviewed or relied on by the Court, even if otherwise properly authenticated in the declaration to which they are attached, unless they are accompanied by certified translations into English.")

2

documents are not expressly referenced in his brief, although there is an allusion to "Certain Ministers even requir[ing] Plaintiff to alter time records to eliminate overtime." Opp. Br. at 2. The implication that an employee's manager or supervisor cannot disapprove hours submitted appears inherently implausible but, in this context, not indicative of "commercial" activity.

This exhibit appears to have been offered to bolster Plaintiff's allegations of more than a dozen episodes scattered over a two-year period from February 20, 2018, through January 10, 2020, Nam. Decl. ¶¶ 15-18, 20-33, and on "numerous occasions", id. ¶¶ 19, 34, that he claims were personal, not diplomatic in nature. The brief reiterates these, including in the first person ("On February 21, 2019, Minister Lee requested me to drive . . . ."), Opp. Br. at 13 (emphasis added), making particular emphasis on Minister Lee's spouse's search for "perfect clams," from a farm market to H-Mart and ShopRite, ibid., Nam. Decl. ¶ 27, taking pains to specify which vendor's mollusks were too small or too large. Whether these bivalves were for a diplomatic dinner or other use, Plaintiff fails to enlighten the reader, but implies these were commercial clams.

The ostensible purpose of **Exhibit B** is to support Plaintiff's further attempts to denigrate and embarrass the dignitaries and Mission with and for whom he previously worked, in furtherance of coercing a quick and favorable settlement of this action. As set forth herein, however, there is already an enforceable settlement between these parties from which Plaintiff is trying to run away. Plaintiff's Declaration is both impermissible and inflammatory and should be stricken and sealed.

**Exhibit C** to Mr. Nam's Declaration appears to be Plaintiff's smoking-gun: two color photographs of a neon plastic bag emblazoned with the logo of Bottega Veneta (a Gucci leather goods subsidiary) inside another plastic bag beneath another photograph of a side-view mirror of an automobile and what is identified as Defendant Chung from the rear, as seen through an entrance door to a parking area. As Plaintiff explains the exhibit:

> On November 31, 2021, Minister Chung required me to drive his family members and their friends to a shopping mall. I was required to stand-by in the sedan until they finished shopping for a luxury bag in the Bottega store.

Nam Decl. ¶ 41. There are a number of problems with this evidence, including the common practice of reusing heavy plastic sacks. For one, of course, the date "November 31" does not exist in the Gregorian calendar.[2] Assuming Plaintiff meant November 30, 2021, at this writing that date lies is in the future. Further assuming Minister Chung did, in fact, visit a Bottega outlet in some relevant time frame, Plaintiff fails to set forth in what way that visit comprised commercial conduct by the South Korean government, and whether the purpose was a diplomatic gift, other consular function, or the nature of the purchase at all.

Plaintiff's opposition submission misses the point that UN missions and other diplomatic emissaries in foreign countries must dine, shop, and otherwise attend to the ordinary needs of life for themselves and their expatriate family members. In the diplomatic context, they customarily entertain guests and give gifts. Plaintiff's implication is that any activity other than transport to or from the mission or United Nations headquarters is automatically commercial and, thus, a waiver of sovereign immunity. As set forth in Defendants' moving brief, authorities have held it is not, and hiring a dedicated driver for diplomatic staff promotes safety, security, and, in the instant case, the comfort of conversing in Korean.

Plaintiff fails to explain under applicable authorities what commercial purpose the Mission was purportedly advancing, or in what way the alleged "commercial activity carried on by such state [has] substantial contact with the United States.'" 28 U.S.C. § 1603(e) (emphasis added) (defining the term "commercial activity carried on in the United States by a foreign state"). It is unreasonable as well as implausible to accord Plaintiff an inference that the Republic of Korea was

---

[2] "Thirty days hath September, April June and November . . ." in the familiar child's verse.

running a taxi service by having its employee-driver offer occasional transportation for family members and associates of its Mission. Even Plaintiff does not suggest the Mission charged or profited from such routine duties in its official vehicle.

Plaintiff's opposition concludes with an argument speciously attempting to limit the scope of the Settlement Agreement executed by Plaintiff and Defendants. This is discussed below. As with Nam's other arguments, no basis is presented to let this case move forward.

## II. LEGAL ARGUMENT

### A. Plaintiff's Declaration Cannot Cure Defective Complaint.

Plaintiff affirmatively forewent the opportunity to amend his Complaint (DE-1) as of right under Rule 15(a)(1) of the Federal Rules of Civil Procedure, within 21 days following the filing of Defendants' motion to dismiss (DE-24). See Letter from Diana Seo to Court dated Oct. 6, 2021 (DE-26) (stating Plaintiff's intention to rely on the pleading under individual practice). An amendment without leave would have afforded Plaintiff ample opportunity to add such additional factual allegations he may deem necessary to survive Defendants' motion. Plaintiff now endeavors to bolster his Complaint and address its deficiencies with a 47-paragraph affidavit. Affidavits are prohibited for the purpose of curing the inadequacies of a complaint following a Rule 12 motion to dismiss.

> It is well settled that even where a plaintiff submits affidavits "containing factual allegations that might suffice to state a claim, . . . those affidavits are inadmissible to cure the defect in a complaint when deciding a motion to dismiss."

Adler v. Aztech Chas. P. Young Co., 807 F. Supp. 1068, 1072 (S.D.N.Y. 1992) (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991)); Telebrands Corp. v. Del Labs., Inc., 719 F.Supp.2d 283, 290 (S.D.N.Y. 2010) ("[A]ffidavits are inadmissible to cure a defect in the complaint on a motion to dismiss."); Goodman v. Port Auth. of N.Y. & N.J., 850 F.Supp.2d 363,

5

380 (S.D.N.Y. 2012) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint."); see also New York v. Mountain Tobacco Co., 55 F.Supp.3d 301, 315 (E.D.N.Y. 2014) ("[O]n a motion to dismiss, . . a plaintiff may not supplement a deficient pleading through additional facts contained in affidavits.").

The reasoning is grounded in time-honored principles of notice and opportunity to prepare a defense. As explained by the Second Circuit,

> [a] complaint provides a defendant with "notice of what the plaintiff's claim is and the grounds upon which it rests." Having received such notice, a defendant may conduct his trial preparation accordingly and is not required, based on the plaintiff's subsequent conduct in litigation, to anticipate future claims that a plaintiff might intend to pursue.

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 201–02 (2d Cir. 2007) (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512-14 (2002)) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiff's newly offered **Exhibits A-C**, but "extrinsic documents may be considered as part of the pleadings [only] if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). None of these apply here. Accordingly, Plaintiff's Declaration in opposition should be stricken and disregarded by the Court on Defendant's motion to dismiss. The viability vel non of this action should rise or fall on the four corners of Plaintiff's Complaint alone.

Moreover, Nam's Declaration is patently designed to place the individual Defendants in a bad light, portraying respected diplomats as bon vivants, partying on the public purse of their homeland. His Declaration mimics the Complaint's effort to allege dalliances and worse. Plaintiff's doubling down on his smear campaign goes beyond ingratitude to the officials who admittedly extended his employment beyond Korea's time-honored retirement age during the pandemic. It is a veritable shakedown for cash to make the attacks stop.

6

Defendants respectfully beseeches the Court to seal, as well as strike Plaintiff's Declaration, and to redact those portions of his brief echoing the allegations in the Declaration.

### B. Plaintiff's Selected Authorities Fail to Support a Commercial Exception.

Plaintiff's opposition fails to address, much less distinguish, Defendants' cited authorities regarding similarly situated diplomatic stations confronting chauffeurs' complaints arising from their employment and driving duties. Plaintiff relies on inaccurate, inapplicable, or obsolete law to draw a distinction between strictly diplomatic personnel authorized to speak for their sending governments, and everyone else. For example, Plaintiff quotes Holden v. Canadian Consulate, 92 F.3d 918 (9th Cir. 1996), as follows:

> For purposes of determining "commercial activity" under FSIA, foreign sovereign's employment of diplomatic, civil service or military personnel is governmental, and employment of other personnel is commercial.

Opp. Br. at 6. There are at least two problems with Plaintiff's argument. First, the text reproduced within quotation marks appears nowhere in the decision.[3] Second, the Second Circuit has refused to follow Holden in this regard:

> We therefore decline to adopt the approach to the "civil service" language of the House Report of the FSIA, taken by the District Court, that relies on whether certain familiar indicia of "civil service" are present.

---

[3] Defendants speculate that Plaintiff intended the following passage:
> We adopt the standard suggested by the legislative history, that is, employment of diplomatic, civil service or military personnel is governmental and the employment of other personnel is commercial. Because private parties cannot hire diplomatic, civil service or military personnel, such hiring is necessarily governmental.

Holden, 92 F.3d at 921 (referring to H. Rep. No. 94–1487, 94th Cong., 2d Sess. at 16, reprinted at 1976 U.S. Code Cong. & Ad. News 6604, 6615) (the "House Report").

7

Kato v. Ishihara, 360 F.3d 106, 114 (2d Cir. 2004) (citing Holden, 92 F.3d at 921) (other citations omitted). In a further argument, Plaintiff points to this Circuit's decision in Swarna v. Al-Awadi, 622 F.3d 123 (2d Cir. 2010):

> The Second Circuit's description of the commercial activity exception in Swarna is particularly instructive: [T]o determine the applicability of the commercial activity exception, we ask not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives but rather whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce.

Opp. Br. at 6 (citing Swarna, 622 F.3d at 147). Defendants agree Swarma is instructive but using a converse analysis. Vishranthamma Swarna was employed as a domestic servant in the home of the Third Secretary to the Permanent Mission of the State of Kuwait to the United Nations in New York. Swarna, 622 F.3d at 128. The diplomat confiscated her passport and visa, placing them in the Kuwaiti Mission. Ibid. Her duties occasionally involved cooking for Kuwaiti Mission guests late into the night and teaching other Mission employees' domestics how to cook traditional Kuwaiti dishes, including at the Mission. Id. at 129. It suffices to say Swarna suffered horrific abuse at the hands of the Third Secretary and his wife. See id. at 128-30. At some point, the diplomat and spouse left for abroad, and Swarna was able to escape, tell a "driver of her ordeal and was taken to a temple where she could find refuge." Id. at 130. She then sued the individuals and Kuwaiti Mission under the commercial activity exception given her nondiplomatic duties on behalf of an official. See id. at 131.

Even in this extreme case, the Second Circuit "reject[ed] Swarna's claim that the commercial activity exception applies to pierce Kuwait's sovereign immunity." Id. at 148. Her occasional cooking and domestic services in support of Mission events, its employees, or their servants were insufficient to support a waiver.

8

Conversely, in the instant case, Nam's duties were primarily in support of the diplomatic staff as a direct employee. His occasional forays to malls or restaurants limited to Mission staff, families or associates could not support a finding of commercial activity by their nature.

### C. Weight of Authorities Strongly Rejects a Drivers' Commercial Exception.

Defendants will rely on their moving brief and its authorities regarding chauffeurs and similar support personnel, as Plaintiff has not refuted or shown them to be inapposite. By way of a further precedent, Defendants would cite to the recent decision regarding another diplomatic driver in Bardales v. Consulate Gen. of Peru in N.Y., 490 F. Supp. 3d 696 (S.D.N.Y. 2020). The Bardales decision makes a well-reasoned application and overview of Second Circuit jurisprudence in this subject.

Juan Carlos Bardales was hired by the Consulate in 2013 "as part administrative customer service, and part personal assistant" to the former Consul General of Peru, Mario Teresa Merino Villaran de Hart ("Merino"), id. at 698, but alleged "that the majority of his time from 2013 to 2015 was spent chauffeuring or running errands for Merino and her family and friends", id. at 702. Bardales "complained that he was required to work extra hours without overtime pay, noting that he worked in excess of 40 hours a week" 60% of which was for Merino. Id. at 699. Bardales sued the Consulate as well as its Ambassador. In an echo of the case at bar,

> Bardales describes the work he performed for Merino as "personal" in nature. He alleges he drove her "to the gym, the supermarket and to clothing stores" and "chauffeur[ed]" her children, friends, and other relatives "when they were in New York City ... so they could enjoy various tourist attractions." Bardales alleges that approximately 60% of the individuals he chauffeured did not work on behalf of the Consulate.
>
> Bardales alleges he never received overtime pay, only a fixed monthly salary, despite exceeding the hours he was expected to work regularly. Bardales was never asked to "clock in" or to use any other formal method to account for his hours. By virtue of his

9

> chauffeuring work for Merino, Bardales additionally "incurred expenses including, but not limited to, parking, parking tickets, tolls and gas." To obtain reimbursement for these expenses, Defendants allegedly required Bardales to "sign a false receipt stating that the reimbursement was in fact for overtime pay."

Ibid. (alteration in original) (citations to record omitted). The Court found that where claims arise from an employment relationship with a sovereign entity, the commercial activity exception could only apply where the employment relationship was commercial in nature. Id. at 701 (citing Figueroa v. Ministry for Foreign Affairs of Sweden, 222 F. Supp. 3d 304, 311 (S.D.N.Y. 2016)). In further reliance on Figueroa, the Bardales court noted that Kato

> "require[s] two inquiries in employment cases: First, 'whether the activity to which the plaintiff's employment was directed is governmental'; and second, 'whether the plaintiff's employment relationship was sufficiently intertwined with that activity to provide that the employment relationship itself was part of the governmental function.'"

Id. at 702 (quoting Figueroa, 222 F. Supp. 3d at 313) (internal quotation to Hijazi v. Permanent Mission of Saudi Arabia to UN, 689 F. Supp. 2d 669, 674–75 (S.D.N.Y. 2010)). The Bardales court had little trouble under Kato and subsequent decisions that "the focus of the inquiry ought to be on the employer's general actions[.]" Ibid. (quoting Hijazi, 689 F. Supp. 2d at 674 (emphasis in Bardales); Under Kato, it considered whether the "activities in New York were typical of a private party engaged in commerce." Ibid. (quoting Kato, 360 F.3d at 111) It found "[t]he employer's actions here were the operation of a consulate, plainly diplomatic, and therefore governmental", and therefore immune. Ibid. (quotation omitted). That was notwithstanding that

> Bardales was not a diplomat or a policy advisor, whose work clearly is intertwined sufficiently with the Peruvian Consulate's governmental activities, but also, he was not a "purely clerical staff" member who more easily fall "within the commercial activity exception."

Ibid. (quoting Hijazi, 689 F. Supp. 2d at 675). The allegations and evidence did not show that "Bardales spent a significant amount of his time as a personal assistant/chauffeur, let alone a majority of his time, on these more personal tasks. . . . [and] a significant portion of these non-chauffeuring duties were intertwined with the Consulate's governmental function." Id. at 704-05. The Bardales court concluded that because the plaintiff spent extensive time driving officials to official destinations, together with certain customer-service work, "the employment relationship here was non-commercial in nature and thus, [] the Consulate is entitled to immunity under the FSIA." Id. at 705.

Finally, the Bardales court determined that the individual consular defendant was similarly immune. Because the work of a personal nature for the Ambassador was performed "pursuant to his contract with the Consulate . . . . Merino's consular function of managing Consulate employees is implicated here, and the wrongful payment-related actions she allegedly took, are in furtherance of this function. Accordingly, Merino is entitled to immunity" too. Id. at 707. If 60% of Bardales's time spent as a personal driver and tour guide as a "chauffer" does not waive sovereign immunity, Plaintiff Nam's dozen-plus trips, even if credited, paid by the Mission under the parties' contract fall woefully short of a waiver of sovereign immunity under the FSIA.

### D. The Parties' Settlement Agreement Is Effective to Bar Suit.

Lastly, Plaintiff does not refute but attempts to engraft an exception upon the Settlement Agreement signed by him and the Mission. See Settlement Agreement dated Sept. 1, 2020, annexed as Exhibit B to the Declaration of Jinho Jo in Support of Defendants' Motion for Sanctions, dated Sept. 3, 2021 (DE 24-7). A simple, single-page document, it states that

> [t]he above two sides submit this agreement because they have agreed not to raise civil and criminal claims in the future with respect to the termination of the employment relationship of the local employee (Hyun-Hee Nam) as of June 30, 2021.

11

Id. Plaintiff now makes the novel argument that the Settlement Agreement is inapplicable because it purportedly pertains only to "the 'termination' of the employment relationship with Defendants"; i.e., not to any claims that "occurred during the employment", and that the Complaint pertains only to events occurring while Nam in the Mission's employ. Opp. Br. at 16-17 (emphasis omitted).

Plaintiff cites no legal authority to support this distinction without a difference, and Defendants decline to do so in his stead. The argument lacks merit on its face.

Certainly, retirement at or after age 60 pursuant to Korean custom pertains to the "termination" of Nam's employment, not to events "during" the course of it. This does not conclude the inquiry, however.

It is not disputed that the Settlement Agreement was executed by the parties, and that happened on the first of September of 2020, about ten months before the "termination" of Plaintiff's employment. So, is Plaintiff arguing is that the Mission offered Nam money for the right to still be sued for whatever happened before or "during" the nearly year remaining of his employment?

Assuming, arguendo, New York domestic law governs this contract, Plaintiff's dubious construction should fail under standard principles of construction.

> In adjudicating the rights of parties to a contract, courts may not fashion a new contract under the guise of contract construction rather, they are required to discern the intent of the parties, "'to the extent that [the parties] evidenced what they intended by what they wrote'".

Slatt v. Slatt, 64 N.Y.2d 966, 967 (1985) (citing Morlee Sales Corp. v. Manufacturers Trust Co., 9 N.Y.2d 16, 19 (1961)) (quoting Laba v. Carey, 29 N.Y.2d 302, 308 (1971) (internal quotation to Raleigh Assocs. v. Henry, 302 N.Y. 467, 473 (1951)). Plaintiff's interpretation of the Settlement Agreement would not only have the Court give effect to a new contract, but the resulting new

agreement's terms also would be absurd and in conflict with any reasonable expectations of the Mission.

> Moreover, "[a] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." "The parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent."

In re Oneida, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting Lipper Holdings, LLC v. Trident Holdings, LLC, 1 A.D.3d 170, 171 (N.Y. 1st Dep't App. Div. 2003) (internal citations omitted) and Ocean Transp., Inc. v. American Philippine Fiber Indus., 743 F.2d 85, 91 (2d Cir. 1984) (internal quotation to Old Colony Trust Co. v. Omaha, 230 U.S. 100, 118 (1913)), aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida Ltd., No. 09-cv-2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010).

If Plaintiff contends this agreement is construed under South Korean law, and that such law dictates his desired result, the argument still fails for want of notice. See Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."). And "[c]ourts will dismiss claims resting on the application of foreign law where the party advancing the claim fails to provide authority for their interpretation of the law." Ancile Inv. Co. v. Archer Daniels Midland Co., 992 F. Supp. 2d 316, 321 (S.D.N.Y. 2014).

As such, Defendants respectfully submit that Plaintiff has advanced no argument sufficient to vitiate the Settlement Agreement he freely signed.

### III. CONCLUSION

For the foregoing reasons, Defendants Permanent Mission of the Republic of Korea to the United Nations, Hyon Cho, Jinho Jo, and Daeyong Chung respectfully request the Court grant their motion to dismiss the Complaint in its entirety, with prejudice.

Dated: November 8, 2021                    Respectfully submitted,

    */s/ Joshua S. Lim*
Joshua S. Lim
**Kim, Cho & Lim, LLC**
163-10 Northern Boulevard, Suite 202
Flushing, New York 11358-2652
(t) 718.539.7400
(f): 201.585.7422
joshualim@kcllawfirm.com
*Attorneys for Defendants*

14