USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/21/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Hyunhuy Nam,

                Plaintiff,

     –v–

Permanent Mission of the Republic of Korea to the United
Nations, *et al.*,

            Defendants.

21-cv-06165 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

      Plaintiff Hyunhuy Nam ("Nam") brings this action against his former employer alleging

violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), the New

York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law

("NYCHRL"). Defendants Permanent Mission of the Republic of Korea to the United Nations

("Permanent Mission"), Hyun Cho, Jinho Jo, and Daeyong Chung (collectively, "Defendants")

are a foreign mission and its diplomatic staff. Compl. ¶¶ 4–15, Dkt. No. 11. Defendants move to

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

jurisdiction, invoking the Vienna Convention on Diplomatic Relations ("VCDR") and the

Foreign Sovereign Immunities Act ("FSIA"). In the alternative, they move to dismiss under Rule

12(b)(6) because Nam previously released his claims against Defendants. For the reasons that

follow, that motion is GRANTED IN PART AND DENIED IN PART.

## I.   BACKGROUND

### A.  Factual Summary

The following facts are taken from Plaintiff's complaint. Nam is a 61-year-old permanent resident of the United States who lives in New Jersey. Compl. ¶ 25. Defendant Permanent Mission is a foreign consulate located in Manhattan. *Id.* ¶ 4. Defendant Hyun Cho ("Cho") serves as Ambassador of the Permanent Mission and Defendants Jinho Jo ("Jo") and Dayong Chung ("Chung") serve as Counselor and Minister respectively (collectively, "Individual Defendants"). *Id.* ¶¶ 4–15.

After responding to an online job advertisement placed by the Permanent Mission, Nam was hired by Defendants in 2016. *Id.* ¶¶ 35–36. Nam was responsible for driving members of the Permanent Mission staff and their families or guests in a vehicle owned by the Mission. *Id.* ¶¶ 38, 41, 47. Though Nam's official title was Chauffeur/Administrative Assistant, Nam states that he worked only as a chauffeur or driver for the Permanent Mission and its staff. *Id.* ¶ 37. Defendants characterize Nam as a "member[] of the staff of the mission in the domestic service of the mission." Defendants' Memorandum in Law in Support of Motion to Dismiss ("Defs. Br.") at 11 (quoting VCDR, art 1(g), Apr. 18, 1961, 23 U.S.T. 3227). Defendants do not proffer that Nam had any other responsibilities beyond that of a driver. Nam alleges that during his employment, Defendants underpaid him and pressured him to retire when he reached the age of 60. *See* Compl. ¶¶ 67–100. On September 1, 2020, Nam signed a "Settlement Agreement" with Jo. *Id.* ¶ 94. The agreement stated that Nam would "not . . . raise civil and criminal claims in the future with respect to the termination of the employment relationship . . . as of June 30, 2021." Translated Settlement Agreement at 3, Dkt. No. 24-7. Nam's employment was ultimately terminated on June 30, 2021. Compl. ¶ 100.

**B. Procedural History**

On July 20, 2021, Nam filed a complaint against Defendants alleging multiple violations of federal, state, and city employment law. Dkt. No. 11. As to his compensation, he brings claims of unpaid overtime under the FLSA and the NYLL as well as unpaid promised wage, unpaid spread-of-hours wages, and wage notice and wage statement violations under the NYLL. He also brings age discrimination and hostile work environment claims under both the NYSHRL and the NYCHRL.

On September 30, 2021, Defendants moved to dismiss the case pursuant to Rule 12(b)(1), arguing that they are shielded by sovereign immunity under the VCDR and the FSIA. Defs. Br. In the alternative, Defendants move to dismiss under Rule 12(b)(6), arguing that the signed settlement agreement between the parties precludes liability. *Id.* The motion is fully briefed. Defs. Br., Pl. Br., Dkt. No. 33, Defs. Reply, Dkt. No. 41.

On December 13, 2021, Defendants filed a motion to stay discovery pending resolution of their motion to dismiss.  Dkt. No. 48.  After full briefing, the Court denied that motion to stay. Dkt. Nos. 56, 60.

## II.   LEGAL STANDARD

When confronted with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6), a court must first consider the Rule 12(b)(1) challenge because if it dismisses the complaint for lack of subject matter jurisdiction, "the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (citation omitted).

As to the Individual Defendants, diplomatic immunity is governed by the Vienna Convention on Diplomatic Relations. *Broidy Cap. Mgmt. v. Benomar*, 944 F.3d 436, 441 (2d Cir.

2019).[1] "Diplomatic agents," a term that includes "the head of the mission" and "member[s] of the diplomatic staff of the mission," receive broad immunity. *Id.* at 442 & n.3 (quoting VCDR, art. 1(e)). Only "limited exceptions" can abrogate that immunity. *Tachiona v. United States*, 386 F.3d 205, 215 (2d Cir. 2004). In this circuit, "the plaintiff must prove by a preponderance of the evidence that an exception to diplomatic immunity applies." *Broidy*, 944 F.3d at 443.

As to the Permanent Mission, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). The FSIA is the only act that provides for exceptions from foreign sovereign immunity. *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 559 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1069 (2021).

This case concerns the commercial-activity exception of the FSIA. That exception abrogates immunity when the controversy is "based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). The Supreme Court instructs that "a state engages in commercial activity . . . where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Nelson*, 507

---

[1] Article 31 of the VCDR provides in relevant part:

(1) A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:
  (a) a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;
  (b) an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State;
  (c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

U.S. at 360 (cleaned up). A foreign sovereign's motives are immaterial to this analysis. *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). "Instead, courts ask whether 'the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Pablo Star Ltd. v. Welsh Gov't*, 378 F. Supp. 3d 300, 308 (S.D.N.Y. 2019), *aff'd*, 961 F.3d 555 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1069 (2021) (quoting *Nelson*, 507 U.S. at 360–61).

A foreign state employer-employee relationship can be "commercial" depending upon the context. *Kato v. Ishihara*, 360 F.3d 106, 111 (2d Cir. 2004). "The question courts must ask when evaluating whether a particular employee is engaged in public acts or instead in commercial activity is 'whether [his] activities . . . were typical of a private party engaged in commerce.'" *Mourmouni v. Perm. Mission of Republic of S. Sudan to U.N.*, No. 20-CV-3603 (JPO), 2021 WL 4461829, at *2 (S.D.N.Y. Sept. 28, 2021) (quoting *Kato*, 360 F.3d at 111). "If there is 'nothing quintessentially governmental' about the employee's work . . . the commercial exception applies and U.S. courts may adjudicate the employee's claims." *Id.* (quoting *Pablo Star*, 961 F.3d at 564). If, however, the employee is a "civil servant" or a "*bona fide* public servant," their employment falls outside the scope of the commercial-activity exception. *Pablo Star*, 961 F.3d at 563–64.

This exception also requires that the commercial activity has "substantial contact with the United States." 28 U.S.C. § 1603(e). The exact contours of this standard are "poorly defined." *Pablo Star*, 961 F.3d at 563–64. But "it is clear that Congress intended a tighter nexus than the minimum contacts standard for due process." *Shapiro v. Republic of Bol.*, 930 F.2d 1013, 1019 (2d Cir. 1991).

Once the plaintiff makes an initial showing that an exception to sovereign immunity applies, the defendant "bears the burden of proving, by a preponderance of the evidence, that the alleged exception does not apply." *Pablo Star*, 961 F.3d at 559. In resolving this jurisdictional dispute, the court may not construe disputed issues of fact in favor of one party or another. *Id.*

Additionally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Granting a motion to dismiss is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558. An affirmative defense of release may be raised under a Rule 12(b)(6) motion to dismiss provided that "all relevant facts are shown by the court's own records." *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). The Court may consider only the allegations in the complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## III. DISCUSSION

### A. Individual Defendants are Entitled to Immunity

As Ambassador, Counselor, and Minister of the Permanent Mission, each of the Individual Defendants is entitled to immunity under the VCDR given their uncontested status as diplomatic agents. Defs. Br. at 7; *see Broidy*, 944 F.3d at 442. Nam, having failed to argue that an exception to the Individual Defendants' diplomatic immunity applies, has not proven by a preponderance of the evidence that an exception applies. Therefore, the Individual Defendants

are entitled to immunity and dismissed from the action. *See Mourmouni*, 2021 WL 4461829, at

*1.

**B. The Commercial-Activity Exception to Sovereign Immunity Applies to the Permanent Mission**

The remaining Defendant, the Permanent Mission, is not entitled to sovereign immunity

because the commercial-activity exception applies. Defendants dispute that Nam's "driving

activities" included errands or trips beyond those "in service of the Mission, its Diplomats, staff,

and their families." Defs. Br. at 11. But even assuming that Nam's work was limited in such a

manner does not place this employer-employee relationship outside the commercial-activity

exception. The hiring, employment, and termination of a chauffeur is not a "power[] peculiar to

sovereigns." *Nelson*, 507 U.S. at 360. Rather, "[e]very aspect of the [sovereign's] *conduct* that

forms the basis of [Nam's] claim could have been done by a private party for commercial gain."

*Pablo Star*, 961 F.3d at 564. The employment of a chauffeur is more analogous to the

employment of "laborers, [or] clerical staff"—which constitute commercial activity—than the

employment of "diplomatic, civil service, or military personnel"—which is quintessentially

governmental. *Kato*, 360 F.3d at 110 (quoting H.R. Rep. No. 94–1487, at 16 (1976), *reprinted in*

1976 U.S.C.C.A.N. 6604, 6615); *see also Zveiter v. Brazilian Nat. Superintendency of Merch.*

*Marine*, 833 F. Supp. 1089, 1093 (S.D.N.Y. 1993) (Sotomayor, J.) (reviewing the FSIA's

legislative history to conclude that the employment of a secretary by a foreign state is

commercial). The Court is mindful that foreign sovereigns may structure civil service differently

than the United States, but Defendants' characterization of Nam as a "member[] of the service

staff" cannot elevate him to the status of a *bona fide* public servant when, at present, Defendants

have not proffered that Nam had responsibilities beyond chauffeuring. Defs. Br. at 11; *Kato*, 360

F.3d at 114 (instructing that the FSIA "should be interpreted to include the broad range of civil

service employment relationships used by countries other than the United States."). The Court concludes that Nam was not employed in a quintessentially governmental capacity.

That conclusion is consistent with a recent decision in this district that involved virtually identical facts and claims. There, two chauffeurs alleged violations of the FLSA and the NYLL against their employer, the Permanent Mission of the Republic of South Sudan and its Deputy Permanent Representative. *Mourmouni*, 2021 WL 4461829, at *1. Defendants moved to dismiss on sovereign-immunity grounds. *Id.* The court granted the motion as to the individual representative but denied the motion as to the permanent mission, applying the commercial-activity exception. *Id.* at *3. The court reasoned that the plaintiffs' work was not "quintessentially governmental" because it was "limited to the [ordinary] tasks of driving the Permanent Mission's staff and their families, delivering packages, and maintaining the Permanent Mission's vehicles." *Id.* at *2–3. In that situation, "the work performed by a chauffeur for a permanent mission 'is activity that could be, and in fact regularly is, performed by private-sector businesses,' such as car services and corporations employing in-house executive chauffeurs." *Id.* at *3 (quoting *Pablo Star*, 961 F.3d at 559). "There is no basis for granting a foreign state immunity for its exploitation of chauffeurs whose work is important but no different from work performed in the private sector." *Id.*

To be sure, several earlier decisions in this district have reached the opposite conclusion on similar facts. *See, e.g.*, *Figueroa v. Ministry of Foreign Affs. of Swed.*, 222 F. Supp. 3d 304 (S.D.N.Y. 2016); *Bardales v. Consulate Gen. of Peru in N.Y.*, 490 F. Supp. 3d 696 (S.D.N.Y. 2020). But like the court in *Mourmouni*, this Court declines to follow those cases. In *Figueroa*, for example, the court found that "transportation responsibilities as a chauffeur at the Mission were sufficiently intertwined with the diplomatic function of the Mission such that the

employment itself was part of the defendants' sovereign function." *Figueroa*, 222 F. Supp. 3d at

315. But, as *Mourmouni* observed, that case is distinguishable on its "exceptional" facts because

the chauffeur in question was responsible for driving members of Sweden's royal family.

*Mourmouni*, 2021 WL 4461829, at *3 ("It is within reason to believe that driving literal royalty

through New York City is materially distinguishable from the work of the average Uber or Lyft

driver.").

      More importantly, the *Figueroa* court did not have the benefit of the Second Circuit's

reasoning in *Pablo Star* decided four years after. In *Pablo Star*, the Second Circuit clarified that

a court's inquiry in applying the commercial-activity exception turns on the activity's "outward

form" (in that case, the "unauthorized use of photographs on promotional websites") as opposed

to the *purpose* of the sovereign's activity (in that case, promoting tourism to the foreign country).

961 F.3d at 564–65. That the unauthorized use of a photograph "was done by a government body

pursuant to its statutory authority in order to promote tourism, rather than to make a profit, goes

to the activity's *purpose* rather than its 'outward form.'" *Id.* at 564 (emphasis added). The

reasoning in *Figueroa* hinged on the mission's purpose in employing a chauffeur ("the safe

transport of Swedish dignitaries") as opposed to the conduct's outward form (the employment of

a driver). 222 F. Supp. 3d at 315. This reliance on "a very broad characterization of the activity"

incorrectly "conflate[s] the act with its purpose." *Pablo Star*, 961 F.3d at 562. Such a broad

characterization elucidates the reasons for the sovereign's actions, but "not what it did to

accomplish its goals." *Id.* at 562. Take, for example, the employment of a secretary. Even if the

secretary is employed to further the mission of the foreign state, that employment would fall into

the commercial-activity exception because "the foreign sovereign enters the marketplace and

acts just as a private party would [to employ the secretary]." *Zveiter*, 833 F. Supp. at 1093.

The *Bardales* court relied heavily on the reasoning in *Figueroa* and concluded that a plaintiff's employment that included, but was not limited to, chauffeuring duties, was not commercial. *Bardales*, 490 F. Supp. 3d at 705. That plaintiff had responsibilities apart from chauffeuring, including "actually provid[ing] consular services, and serv[ing] as a direct representative of the Consulate," all of which, the court found, "went beyond . . . clerical tasks." *Id.* at 703. Thus, on its facts, *Bardales* is distinguishable because Nam alleges that he worked only as a chauffeur. To the extent that *Bardales* concluded that chauffeuring itself is quintessentially governmental in nature, this Court disagrees, finding it inconsistent with *Pablo Star*.[2]

Once a court determines that the conduct was commercial, it must also determine if the activity had "substantial contact with the United States." 28 U.S.C. § 1603(e). The court concludes that the conduct alleged in the complaint—including the hiring, employment, and termination of a driver over the span of approximately five years in New York and New Jersey— meets the standard for substantial contact. *See, e.g.*, *Everard Findlay Consulting, LLC v. Republic of Surin.*, 831 F. App'x 599, 601 (2d Cir. 2020) (finding substantial contact when many aspects of a contract were negotiated in, performed in, and targeted the United States); *Pablo Star*, 961 F.3d at 565 (finding substantial contact when "the Welsh Government played an active role in the United States in the development and distribution in New York of promotional materials").

---

[2] Defendants also rely on *Crum v. Kingdom of Saudi Arabia*, which concluded that employing a chauffeur did not fall into the commercial-activity exception. No. 05-275, 2005 WL 3752271 (E.D. Va. July 13, 2005). Given that this out-of-circuit case does not account for *Pablo Star*, the Court does not find this case persuasive and declines to follow it.

Defendants assert that applying the commercial-activity exception here would "seriously infringe upon and impair the normal diplomatic balance" between the United States and foreign countries. Defs. Br. at 7. This argument, even if true, does not override the FSIA and the binding interpretation of its provisions. Moreover, "[c]ourts around the world have permitted embassy and consulate chauffeurs to bring cases under the restrictive theory of state immunity that the FSIA codifies." *Mourmouni*, 2021 WL 4461829, at *3. This ruling will not disturb international norms when "foreign courts would already allow chauffeurs employed by a U.S. embassy or consulate to bring claims relating to unlawful labor conditions." *Id.*

## C. The Settlement Agreement Does Not Release the Remaining Defendants from Liability for the Claims At-Issue

Finally, the Court denies Defendants' motion to dismiss pursuant to Rule 12(b)(6). Defendants argue that the settlement agreement Nam signed was valid, enforceable, and bars all of his employment-related claims. Since such a reading of the agreement would contravene its plain language, the Court cannot interpret the settlement in that way.

The one-page settlement agreement bars Nam only from bringing claims "with respect to the *termination* of the employment relationship . . . as of June 30, 2021." Translated Settlement Agreement at 3 (emphasis added). But the claims Nam brought arise from conduct that occurred during the course of his employment—like his wages, hours, and an allegedly hostile work environment—not from his termination. Nam does not bring, for example, a claim of wrongful termination or any claim related to the events of June 30, 2021, which, by the plain language of the agreement, would be barred. This Court disagrees with Defendants' characterization of the settlement agreement as "permissibly broad" enough to sweep in all or any of Nam's claims when it refers only "to the termination of the employment relationship." Defs. Br. at 16; *see Termination*, Black's Law Dictionary (11th ed. 2019) ("The complete severance of an employer-

employee relationship."); *cf. McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (defining a wrongful-termination claim based on the circumstances of a plaintiff's discharge by the employer). Even assuming that the settlement agreement was validly executed and is enforceable, its text does not preclude Nam's claims. Therefore, the Court denies Defendants' motion to dismiss on this basis.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. The Court dismisses Individual Defendants Cho, Jo, and Chung from the action and denies the motion to dismiss claims against the Permanent Mission.

As previously ordered, the Court will hold a case management conference on April 15, 2022, at 3:15 p.m.

This resolves docket number 24.


SO ORDERED.

Dated: January 21, 2022
        New York, New York

_____
        ALISON J. NATHAN
        United States District Judge

12