UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hyunhuy Nam,<br><br>      Plaintiff,<br><br>- against -<br><br>Permanent Mission of the Republic of Korea to the United Nations,<br>      Defendant. | Case No. 1:21-cv-06165 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Yongjin Bae, Esq.

Hang & Associates, PLLC

136-20 38th Avenue, Ste 10G

Flushing, NY 11354

1

**Table of Contents**

**PRELIMINARY STATEMENT** .................................................................................................. 5

**FACTUAL BACKGROUND** ..................................................................................................... 5

**LEGAL STANDARD** ................................................................................................................ 7

**ARGUMENT** ............................................................................................................................... 8

    **I.**    *This Court Should Grant Nam's Motion for Partial Summary Judgment Because There Is No Genuine Issue of Material Fact, and Nam Is Entitled to Judgment as a Matter of Law.* ........................................................................................... 8

        *A.*   *The Court Has Subject-Matter Jurisdiction Under the Foreign Sovereign Immunities Act's Commercial Activity Exception* .................................................................... 8

        *B.*   *Permanent Mission Engaged in Commercial Activity by Hiring Nam as a Chauffeur, Utilizing Nam's Service to Perform Activities That Were Non-Governmental, and Using Nam In Furtherance of Conducting Commercial Activity.* ........................................... 9

        *C.*   *Permanent Mission Is Nam's Employer Under FLSA and NYLL.* ............................. 10

        *D.*   *Permanent Mission Failed to Pay Nam's Overtime Pay as Required by FLSA and NYLL.* ............................................................................................................................... 12

        *E.*   *Nam Is Entitled to Liquidated Damages Under FLSA and NYLL.* ............................ 15

        *F.*   *Permanent Mission Violated New York Paystub Violation.* ....................................... 16

        *G.*   *Permanent Mission Violated New York Time of Hire Wage Notice.* ......................... 16

        *H.*   *Nam Is Entitled to Prejudgment Interest.* ................................................................... 17

        *I.*   *Nam Is Entitled to Cost and Attorneys' Fees.* ............................................................ 17

**CONCLUSION** ......................................................................................................................... 18

## CASES

**Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)** ------ 6

*Argentine Republic v. Amerada Hess Shipping Corp.*, **488 U.S. 428, 439 (1989)** ----------------- 7

**Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-1059 (2d Cir. 1988)** ----------------------- 10

**Cannon v. Douglas Elliman, LLC, 2007 WL 4358456, *4 (S.D.N.Y. 2007)** -------------------- 10

**Carter v. Frito-Lay, Inc., 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), aff'd, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981)** ------------------------------------------------------------------- 16

**Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)** ----------------- 6

**Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 83 (2d Cir. 1994)** -------------------------- 15

**Choudhury v. Hamza Express Food Corp., 666 Fed. Appx. 59 (2d Cir. 2016)** --------------- 14

**D'Amico v. City of N.Y., 132 F.3d 145 (2d Cir.1998)** ----------------------------------------- 6

**Gierlinger v. Gleason, 160 F.3d 858, 874 (2d Cir. 1998)** -------------------------------------- 15

**Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011))** ----------------------------- 13

**Martin v. Priba, 1992 WL 486911** -------------------------------------------------------------- 10

**McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 176 Misc. 2d 325, 336 (N.Y. County 1997).** ----------------------------------------------------------------------------------- 15

**McLean v. Garage Mgmt. Corp., 2012 U.S. Dist. LEXIS 55425, at *21 (S.D.N.Y. April 19, 2012)** --------------------------------------------------------------------------------- 13

*Mukaddam v. Permanent Mission of Saudi Arabia*, **111 F. Supp. 2d 457 (S.D.N.Y. 2000)** ----- 9

**Redd v. N.Y. Div. of Parole, 678 F.3d 166 (2d Cir.2012)** -------------------------------------- 6

**Reilly v. Natwest Mkts. Group, 181 F.3d 253, 265 (2d Cir. 1999)** ------------------------------ 15

**Schwind v. EW & Associates, Inc., 357 F.Supp.2d 691, 702 (S.D.N.Y. 2005)** ------------------ 10

**Zhong v. Zijun Mo, No. 10-CV-0806 (RER), 2012 WL 2923292 (E.D.N.Y. 2012)** ------------ 10

## STATUTES

**12 N.Y.C.R.R. § 142-2.2** ----------------------------------------------------------------------- 11

**28 U.S.C. § 1605(a)(1) and (2)** ----------------------------------------------------------------- 7

**28 U.S.C. § 1605(a)(2)** ------------------------------------------------------------------------- 9

**Fed. R. Civ. P. 56(a)** --------------------------------------------------------------------------- 6

**FLSA 29 U.S.C. § 206(a)(1)** -------------------------------------------------------------------- 7

**FLSA 29 U.S.C. § 207(a)(1)** -------------------------------------------------------------------- 7

**FLSA 29 U.S.C. § 216(b)** ......................................................................................... **13, 16**

**FLSA 29 U.S.C. § 260** ............................................................................................... **13**

**NYCRR § 146-1.2, 12 NYCRR § 146-1.4** ................................................................ **7**

**NYLL § 195-1(a)** ...................................................................................................... **15**

**NYLL § 195-1(d)** ...................................................................................................... **14**

**U.S.C. § 1604** ............................................................................................................ **7**

**PRELIMINARY STATEMENT**

Plaintiff, Hyunhuy Nam (hereinafter "Nam"), by their attorneys, Hang & Associates, PLLC, respectfully submits this memorandum of law in support of his motion for partial summary judgment against Permanent Mission of the Republic of Korea to the United Nations (hereinafter "Permanent Mission"), seeking an order granting partial summary judgment in his favor and hold Permanent Mission liable for (1) failure to pay overtime pay under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL); (2) failure to pay spread of hours premium under NYLL; (3) failure to provide Wage Notices to Plaintiff at the time of hiring as required by NYLL; (4) failure to provide Paystubs to Plaintiff as required by NYLL; (5) any liquidated damages and/or punitive damages allowed under FLSA and NYLL; (6) reasonable attorneys' fees and cost pursuant to FLSA and NYLL; (7) the cost of disbursement of this action; (8) prejudgment and post-judgment fees; and (9) any other further legal and equitable relief as this Court deems necessary, just, and proper.

For the following reasons, this Court should grant Nam's motion for partial summary judgment because there is no genuine issue of material fact, and Nam is entitled to judgment as a matter of law.

**FACTUAL BACKGROUND**

This action arises out of Nam's employment at Permanent Mission during the course of performing his duties as a chauffeur for Permanent Mission and for its diplomatic staff to provide transportation. Nam was a former employee of Permanent Mission from around June 28, 2016 to June 30, 2021. Compl. ¶ 25.  Although Nam was hired to work as a chauffeur for Permanent Mission and its staff, Permanent Mission permitted and its diplomatic staff utilized

Nam's service and Permanent Mission's automobile to engage in their personal businesses and providing free transportation for their family, friends, and acquaintances. Id. ¶¶ 38, 41, 47.

In or about June 2016, Nam was searching for employment via the Hey Korean's Website. Nam Decl. ¶4 Hey Korean's Website lists various jobs, such as salesperson, driver, and waiter, in the Korean-language. Id. ¶4 While searching, Nam found a listing for a chauffeur position in the "driver-wanted" section posted by the Permanent Mission. Id. ¶5 Nam applied the position and was subsequently interviewed and hired by the Permanent Mission.  Id. ¶7

Nam officially began his work duties on or about July 1, 2016.  Two days later, Nam was required to sign a "Contract for Employing a Chauffeur" setting forth working hours and other details for a one-year term of employment. Id ¶8.  Nam was required to renew the contract annually, though the listed "employer" changed with the Permanent Mission staff.  Id ¶8 "Contract for Employing a Chauffeur" contains provision with regard to overtime pay. Id ¶9. Though Nam recorded overtime hours and advised staff that such personal tasks were not within the scope of Plaintiff's duties, overtime was ignored and orders for personal tasks continued. Id ¶11.

Throughout Nam's employment with Permanent Mission, he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked. Compl. ¶ 67 Permanent Mission did not compensate Nam for overtime compensation according to state and federal laws. Compl. ¶ 74 Permanent Mission paid Nam's overtime wage in accordance with the terms in employment contract and it stated that overtime shall be capped by 52 hours per month.

Nam Decl. ¶14 Permanent Mission did not pay Nam's overtime wage although Nam worked more than 52 hours per month and the rate was much lower than Nam should have been entitled to receive under FLSA and NYLL. Id. ¶ 15

As a result, Permanent Mission has failed to pay Nam overtime payment for the entire period which Nam worked. Further, Throughout Nam's employment with Permanent Mission, Permanent Mission never gave Nam any wage notices pursuant to New York Labor Law § 195 at Nam's time of hire, and Permanent Mission never gave Nam paystubs along with Permanent Mission's payment to Nam. Id. ¶ 16, 17

## LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir.2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." Id.

This standard imposes the initial burden on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. Id. at 324, 106 S.Ct. 2548 ; see also Anderson, 477 U.S. at 256-57, 106 S.Ct. 2505. The non-moving party "may not rely on

mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful."   D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir.1998) (collecting cases).

## ARGUMENT

I. **This Court Should Grant Nam's Motion for Partial Summary Judgment Because There Is No Genuine Issue of Material Fact, and Nam Is Entitled to Judgment as a Matter of Law.**

This Court should grant Plaintiff's partial summary judgment motion because there is no genuine issue of material fact, and Plaintiff is entitled to judgment in his favor as a matter of law. Under the FLSA and NYLL, employees must be paid at least the minimum wage rate for each hour worked, and be paid at least the one-and-one-half times their regular rate for each hour worked over forty (40) hours worked in a week. FLSA 29 U.S.C. § 207(a)(1), FLSA 29 U.S.C. § 206(a)(1), 12 NYCRR § 146-1.2, 12 NYCRR § 146-1.4.

Here, throughout Nam's employment with Permanent Mission, he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked. Compl. ¶ 67 Permanent Mission has failed to pay Nam overtime payment for the entire period which Nam worked.

A. **The Court Has Subject-Matter Jurisdiction Under the Foreign Sovereign Immunities Act's Commercial Activity Exception**

The Foreign Sovereign Immunities Act ("FSIA") provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp*., 488 U.S. 428, 439 (1989). Under FSIA, a foreign state "shall be immune from the jurisdiction of the courts of the United States and of the States **except** as

provided in sections 1605 to 1607 of this chapter." *Id.*; *See also*, U.S.C. § 1604. The two exceptions relevant to this case are codified at 28 U.S.C. § 1605(a)(1) and (2):

> A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case –
> (1) in which the foreign state has waived its immunity either explicitly or by implication . . .
> (2) in which the action is based upon a **commercial activity** carried on in the United States by the foreign state…. *Id.*

The FSIA expressly provides exceptions to its grant of immunity, including the commercial activity exception that specifically applies to the instant case. In this case, Permanent Mission posted a hiring advertisement on Hey Korean's website to hire a chauffeur to work for Permanent Mission. Compl. ¶35. After Nam learned of Permanent Mission's chauffeur position, he wrote an email describing his qualifications that he has a Commercial Driver's License and the years of driving experience as a commercial driver when he forwarded his resume in the same email. Nam Decl. ¶6. In response to Plaintiff's email, the Permanent Mission Secretary contacted Plaintiff by sending him a reply email using a *Hotmail* email address. Id. After Permanent Mission's Secretary conducted an interview, Plaintiff was I was hired as a chauffeur, as one of Permanent Mission's non-diplomatic employees, and he was *supposed* to drive Permanent Mission's diplomatic employees (Id.; Nam Decl. ¶¶7,8). However, the nature (as opposed to the purpose and the job title) of Nam's actual employment and the duties Nam performed were commercial, rather than governmental, This Court has jurisdiction over Plaintiff's Complaint under the FSIA's commercial activity exception.

**B. Permanent Mission Engaged in Commercial Activity by Hiring Nam as a Chauffeur, Utilizing Nam's Service to Perform Activities That Were Non-Governmental, and Using Nam In Furtherance of Conducting Commercial Activity.**

9

Under the commercial activities exception, a foreign sovereign is not immune from suit in any case in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2).

The Southern District "look[ed] beyond defendant's assertion that plaintiff was hired by the Mission to carry out the diplomatic affairs of Saudi Arabia," but instead "focus[ed] on the Mission's specific act of entering into an employment contract with plaintiff to perform research, writing, and clerical duties on its behalf." *Mukaddam v. Permanent Mission of Saudi Arabia*, 111 F. Supp. 2d 457 (S.D.N.Y. 2000) The Court asserted that "private parties do not maintain a staff to articulate or carry out foreign policy," and defendant erroneously focused upon "the purpose behind plaintiffs employment rather than the Mission's specific conduct of employing her to perform the aforementioned duties." Id. "Because it is clear that private parties in the United States enter into such contracts routinely, the Court finds that Plaintiff's employment with the Mission was commercial, as opposed to governmental, activity. Id.

Here, the work Nam performed for Permanent Mission and its diplomatic staff pursuant to his employment relationship(s) constitutes commercial rather than governmental activity. Accordingly, Nam's employment relationship(s) with Permanent Mission were non-governmental in nature because such relationship and activity are regularly engaged by any private parties.

**C.  Permanent Mission Is Nam's Employer Under FLSA and NYLL.**

Section 203(d) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an entity satisfies the definition of employer under the FLSA is a question of law. Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983), citing Goldberg v. Whitaker House Coop., 366 U.S. 28, 33, 81 S. Ct. 933, 936 (1961). "Although the Supreme Court has emphasized that courts should interpret the provisions of the FLSA expansively, an alleged employer must, at a minimum, possess the power to control the workers in question. Zheng v. Liberty Apparel Co., 2002 WL 398663 at *6 (SDNY) (emphasis added), citing Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999), citing Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984) [*20] and 29 CFR § 791.2. Courts should look to the economic reality of the relationship to determine whether a party possesses such control. Liberty Apparel, at *6, citing Goldberg at 33; Bonnette, at 1469.

The Second Circuit has held that the factors of the "economic realities" test are whether the employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. Carter, 735 F.2d at 12 (citation omitted). Liberty Apparel, at *6. Because the FLSA and New York Labor Law employ similar standards with respect to employment status, the economic reality test has been used to analyze both federal and state wage claims. Cannon v. Douglas Elliman, LLC, 2007 WL 4358456, *4 (S.D.N.Y. 2007); Schwind v. EW & Associates, Inc., 357 F.Supp.2d 691, 702 (S.D.N.Y. 2005) (discussing economic realities factors and holding "that plaintiff is an 'employee' under the broad definition of the FLSA, and therefore may be entitled to overtime pay under the FLSA and New York Labor Law for the period in which he was treated as an independent contractor.").

The economic realities test adopted by the Second Circuit examines (1) the degree of control exercised by the putative employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work in as integral part of the putative employer's business. Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-1059 (2d Cir. 1988). Generally, "[n]o one of these factors is dispositive; rather, the test is based on a totality of the circumstances...The ultimate concern is whether, as a matter of economic reality, the workers depend on someone else's business for the opportunity to render service or are in business for themselves." Id. at 1058-1059. Where the degree of control is so overwhelming as to shut out any possibility for true independence, the factor of control can be determinative. See Martin v. Priba, 1992 WL 486911.

It is clear from the record evidence including the testimony of Nam in this case that Permanent Mission along with Minister were the "employer" of Nam. Minister is the boss of Nam. Dep of Jinho Jo pp 10-11. Permanent Mission through Minister had power to fire and hire Nam by evaluating Nam's performance annually. Dep of Jinho Jo pp 42. Permanent Mission through Minister supervised and controlled Nam's work schedules or conditions of employment. Dep of Jinho Jo pp 12, 14. Permanent Mission through Minister was involved in the day-to-day operations of Permanent Mission. Jinho Jo pp 10-11. Further, During Nam's employment, they required neither discretion nor independent judgment of Nam. Jinho Jo pp 12, 14. The degree of control by Permanent Mission through Minister over Nam is no doubt at the highest level. Dep of Jinho Jo pp 12, 14. Permanent Mission maintained all employment records and control Nam through Minister, therefore, Permanent Mission is Nam's employer under both FLSA and NYLL.

**D. Permanent Mission Failed to Pay Nam's Overtime Pay as Required by FLSA and**

**NYLL.**

Under the FLSA, employers must pay employees at a rate of 1.5 times the employees' regular rate of pay for any hours worked over 40 hours in a work week. 29 U.S.C. § 207(a)(1). The NYLL incorporates and restates the FLSA, such that the analysis of overtime claims under the NYLL is generally the same as under the FLSA.  See 12 N.Y.C.R.R. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended...") An employee's "regular rate" for overtime purposes cannot be less than the lawful minimum wage.

In this case, Permanent Mission failed to pay Nam's overtime pay at one and a half times of the regular hour rate. Throughout Nam's employment with Permanent Mission, he worked approximately for 52 hours to 62 hours per week and received around $5,020.00 - $6,550.00 per month (calculated weekly rate at $1,158.46 - $1,511.54) in cash, regardless of how many hours he actually worked. Compl. ¶ 67 Permanent Mission did not compensate Nam for overtime compensation according to state and federal laws. Compl. ¶ 74 Permanent Mission paid Nam's overtime wage in accordance with the terms in employment contract. See Exhibit B-F.

In pertinent part, it states:

In 2016 employment contract, Permanent Mission set over time wage as $12 per hour on weekdays and $15 per hour on weekends but shall be capped at a maximum of $570 a month.  See Exhibit B. 2016 Employment Contract

In 2017 employment contract, Permanent Mission stated that over time wage shall be paid at the standard amount {(monthly regular wage + bonus x 1/12 / 209 x 150%)} (maximum 52 hours per month) See Exhibit C. 2017 Employment Contract

In 2018 employment contract, Permanent Mission stated that over time wage shall be paid at the standard amount {(monthly regular wage + bonus x 1/12 / 209 x 150%)} (maximum 52 hours per month) See Exhibit D. 2018 Employment Contract

In 2019 employment contract, Permanent Mission set over time wage at  $14.76 per hour but paid at a monthly maximum of 52 hours. See Exhibit E. 2019 Employment Contract

In 2020 employment contract, Permanent Mission set over time wage at  $13.29 per hour but paid at a monthly maximum of 52 hours. See Exhibit F. 2020 Employment Contract

Permanent Mission's overtime record, attached here as Exhibit I pg 1, shows that Nam's overtime payment was capped by $570 per month although Nam's overtime hours were 82 hours in July 2016. See Exhibit I

Permanent Mission's overtime record, attached here as Exhibit I pg 2, shows that how Permanent Mission calculated Nam's overtime payment and the capped amount of overtime payment was $787  per month regardless of how many hours Nam worked per month as overtime. See Exhibit I

Permanent Mission's overtime record, attached here as Exhibit I pg 3, shows that Nam's overtime payment was capped by $787 per month although Nam's overtime hours 91 hours and 45 minutes in January 2018. See Exhibit I

Due to the cap in the overtime payment, Nam had not received his overtime wage even though his monthly overtime hours exceeded 52 hours per month and the rate was much lower than Nam should have been entitled to receive under FLSA and NYLL. 56.1 Statement PP19. As a result, Permanent Mission has failed to pay Nam overtime payment for the entire period which Nam worked for Permanent Mission and has violated the overtime provisions of the FLSA and NYLL .

**E.  Nam Is Entitled to Liquidated Damages Under FLSA and NYLL.**

Nam also entitles Liquidated damages under FLSA and NYLL. Further, liquidated damages in the amount of 100% of the unpaid wages under the FLSA are mandatory.  See, FLSA 29 U.S.C. § 216(b) ("any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. FLSA 29 U.S.C. § 260. Here, Permanent Mission has not met this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. FLSA 29 U.S.C. § 216(b).

The NYLL also provides for a liquidated damages award unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law. McLean v. Garage Mgmt. Corp., 2012 U.S. Dist. LEXIS 55425, at *21 (S.D.N.Y. April 19, 2012) (quoting NYLL § 198(1-a)). The pre-amendment willfulness standard is the same as the FLSA's willfulness standard.  Id. ("the NYLL willfulness' standard under the pre-amendment provision 'does not appreciably differ from the FLSA's willfulness standard'") (quoting  Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011)). The post-amendment good-faith standard is the same as the FLSA's good-faith standard for liquidated damages.

Here, Permanent Mission set their own specific cap for overtime wage and did not pay overtime premium beyond their cap. See Exhibit B-G. Given the uncontroverted evidence of Permanent Mission's willfulness and lack of good faith, Nam is entitled to liquidated damages under the NYLL. The NYLL was amended effective April 9, 2011, increasing the recoverable

amount of liquidated damages for unpaid wages to 100 percent; thus, liquidated damages under the NYLL are computed at 100% of the unpaid wages. NYLL § 663(1). Because Nam may not recover both FLSA and NYLL liquidated damages for overlapping periods of time, Choudhury v. Hamza Express Food Corp., 666 Fed. Appx. 59 (2d Cir. 2016) (rejecting cumulative recovery under FLSA and NYLL), Nam requests only NYLL liquidated damages.

### F. Permanent Mission Violated New York Paystub Violation.

The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d). Permanent Mission failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of Nam. Due to Permanent Mission's violations of New York Labor Law, Nam is entitled to recover from Permanent Mission, jointly and severally, $ 250.00 for each workday the violations occurred or continued to occur, up to $ 5,000.00 per plaintiff. NYLL § 198(1-d). Here, Permanent Mission never gave Nam paystubs along with Permanent Mission's payment to Nam and Nam worked more than 20 workdays. As such, Nam is entitled to $ 5,000.00.

### G. Permanent Mission Violated New York Time of Hire Wage Notice.

The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a). Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to

provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment. Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $ 50.00 for each workday the violations occurred or continued to occur, up to $ 5,000.00 per plaintiff. NYLL § 198(1-b). Here, Permanent Mission never gave Nam any wage notices at Nam's time of hire pursuant to NYLL. Nam worked for more than five years, and is thus entitled to $ 5,000.00.

**H. Nam Is Entitled to Prejudgment Interest.**

Nam also seeks an award of prejudgment interest on the New York law claims for unpaid overtime wages and spread of hours. Under New York law, the court may award prejudgment interest pursuant to NYCPLR § 5001 on an award of back pay. See McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 176 Misc. 2d 325, 336 (N.Y. County 1997). Under New York law, prejudgment interest compensates the plaintiff for the defendant's interest-free use of the plaintiff's money. See Gierlinger v. Gleason, 160 F.3d 858, 874 (2d Cir. 1998); Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 83 (2d Cir. 1994); Reilly v. Natwest Mkts. Group, 181 F.3d 253, 265 (2d Cir. 1999), cert. denied, 528 U.S. 1119 (2000). In addition, under New York law, prejudgment interest can be awarded in addition to liquidated damages. This is because under New York law liquidated damages are considered a penalty, a sanction for willfully failing to pay wages. Carter v. Frito-Lay, Inc., 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), aff'd, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981). Under NYCPLR § 5004, Nam is entitled to a prejudgment interest rate of nine percent per annum simple interest.

**I. Nam Is Entitled to Cost and Attorneys' Fees.**

FLSA and NYLL both contain fee-shifting provisions for actions to recover unpaid wages. FLSA 29 U.S.C. § 216(b) ("the court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); NYLL § 663(1) ("[An employee] may recover ... costs and such reasonable attorney's fees as may be allowed by the court").  Should this court grant summary judgment motion in favor of Nam, Nam should be entitled to cost and attorney fees under FLSA 29 U.S.C. § 216(b) and NYLL § 663(1).

## CONCLUSION

For the reasons set forth above, this Court should grant partial summary judgment in Nam's favor and grant Nam's causes of action alleged in the Complaint and discussed above.

Dated: Flushing, New York
      July 28, 2022

                         HANG & ASSOCIATES, PLLC.
                         /s/ Yongjin Bae
                         Yongjin Bae, Esq.
                         136-20 38th Ave., Suite 10G
                         Flushing, New York 11354
                         Tel: 718.353.8588
                         E-mail: ybae@hanglaw.com
                         Attorneys for Plaintiff