UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HYUNHUY NAM,<br><br>       Plaintiff,<br><br>   v.<br><br>PERMANENT MISSION OF THE REPUBLIC OF KOREA TO THE UNITED NATIONS;<br><br>       Defendant. | Case No.: 1:21-cv-06165-RA<br><br>CIVIL ACTION |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

                      Kim, Cho & Lim, LLC
                      163-10 Northern Boulevard, Suite 202
                      Flushing, New York 11358-2652
                      T: 718-539-7400
                      F: 201-585-7422

On the brief: Joshua S. Lim, Esq.
        Sean S. Kwak, Esq.
        Power J. Chen, Esq.

**TABLE OF CONTENTS**

| | |
|---|---|
| **TABLE OF CONTENTS** | i |
| **TABLE OF AUTHORITIES** | ii |
| **I.   PRELIMINARY STATEMENT** | 1 |
|    A.   JURISDICTIONAL ISSUE PRECLUDES AWARD OF ANY DAMAGES | 1 |
|    B.   PROCEDURAL ISSUE PRECLUDES AWARD OF ANY DAMAGES AT THIS STAGE | 3 |
| **II.   RELEVANT DISPUTED FACTS** | 4 |
|    A.   Plaintiff's Work Schedule and Recording of "Off-Schedule" Hours | 4 |
|    B.   Plaintiff Took His One-Hour Lunch Breaks | 4 |
|    C.   Plaintiff's Records Contain Material Errors | 5 |
|    D.   Plaintiff's "Off-Schedule" Hours are Incongruent to "Overtime" Hours | 5 |
|    E.   Plaintiff's Wage Rates | 6 |
|    F.   Facts Alleged by Plaintiff And Documents Submitted in Support Thereof Are Not Admissible Evidence | 6 |
| **III.   APPLICABLE LAWS** | 7 |
|    A.   Defendant is Not Required to Provide Wage Notices and Wage Statements | 7 |
|    B.   Defendant is Not Required to Pay Spread-of Hours Premium | 7 |
| **IV.   DAMAGE ANALYSIS** | 8 |
|    A.   Working Hours: | 8 |
|    B.   Regular and Overtime Wage Rates | 8 |
|    C.   Payment of Plaintiff's Overtime Wage | 9 |
|    D.   Liquidated Damages | 9 |
|    E.   Pre-Judgment Interest | 10 |
| **V.   CONCLUSION** | 10 |

# TABLE OF AUTHORITIES

**Cases**

Bardales v. Consulate General of Peru in New York, 490 F.Supp.3d 696 (S.D.N.Y. 2020) ......... 2

Butters v. Vance Int'l, Inc., 225 F.3d 462, 465 (4th Cir. 2000) ....................................................... 2

Crum v. Kingdom of Saudi Arabia, 2005 WL 3752271 (E.D. Va. Jul. 13, 2005) ......................... 3

Figueroa v. Ministry for Foreign Affairs of Sweden, 222 F.Supp.3d 304 (S.D.N.Y. 2016) .......... 2

Saudi Arabia v. Nelson, 507 U.S. 349, 361 (1993) .................................................................... 2, 3

**Statutes**

NYLL § 190 .................................................................................................................................... 8

NYLL § 198 .................................................................................................................................... 8

**Regulations**

12 N.Y.C.R.R. § 142 ....................................................................................................................... 9

The Permanent Mission of the Republic of Korea to the United Nations (hereinafter, the "Mission" or "Defendant"), by and through its counsel, the law offices of Kim, Cho & Lim, LLC, hereby respectfully submits this supplemental memorandum of law in opposition to Plaintiff's motion for summary judgment pursuant to the Court's January 3, 2023 Order.

## I. PRELIMINARY STATEMENT

As outlined in the underlying papers submitted in the parties' respective motions for (partial) summary judgment, Plaintiff asserts employment-related claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Defendant asserts it is immune from the jurisdiction of the Courts in the United States under the Foreign Sovereign Immunities Act ("FSIA"), and the United Nations Vienna Convention on Diplomatic Relations ("VCDR").

On July 28, 2022, Defendant filed its motion for summary judgment for lack of jurisdiction, and Plaintiff filed his motion for *partial* summary judgment seeking judgment on liability, only. Plaintiff did not seek an award of damages.

Defendant submits the within papers with objections that the Court should not consider any potential or approximate at issue, and that it is premature for the Court to award any damages without further factfinding at trial.

### A. JURISDICTIONAL ISSUE PRECLUDES AWARD OF ANY DAMAGES

As set forth in Defendant's opposition papers, which incorporate its moving papers with the Court's permission (DE#85), this Court lacks subject-matter jurisdiction over this matter and lacks personal jurisdiction over Defendant, a sovereign entity, under the FSIA. The Court is respectfully referred to Defendant's papers submitted in support of its motion for summary judgment and in opposition to Plaintiff's partial summary judgment for a full briefing on this issue.

The Court's lack of jurisdiction is unequivocal under the plain language of the FSIA: "a foreign state shall be immune from the jurisdiction of the courts of the United States[.]" 28 U.S.C. § 1604. For

1

the Court to award any damages, it is **Plaintiff** who must establish an exception under § 1605 applies. Plaintiff fails to establish that the "commercial activity" exception under § 1605(a)(2) applies.

The inapplicability of the commercial activity exception is clear from the facts present in this matter and its congruency with those in Figueroa and Bardales. There, this Court similarly found foreign sovereigns are immune from suits asserted by chauffeurs of high-ranking officials such as the Ambassador and the Consul General. Figueroa v. Ministry for Foreign Affairs of Sweden, 222 F.Supp.3d 304 (S.D.N.Y. 2016); Bardales v. Consulate General of Peru in New York, 490 F.Supp.3d 696 (S.D.N.Y. 2020). In Figueroa, this Court held the activities of the ambassador's chauffeur are "undoubtedly governmental." 222 F.Supp.3d at 313-15. In Bardales, after first determining the "activity to which the plaintiff's employment was directed" to be "undoubtedly governmental[,]" this Court further found the plaintiff-chauffeur's time spent on the Consul General's personal matters negligible in analyzing the commercial activity exception. 490 F.Supp.3d at 703-4.

Other District Courts, Circuit Courts, and even the Supreme Court have consistently held "a foreign sovereign's decision as to how best secure the safety of its leaders [ ] is quintessentially an act 'peculiar to sovereigns.'" Butters v. Vance Int'l, Inc., 225 F.3d 462, 465 (4th Cir. 2000) (citing Saudi Arabia v. Nelson, 507 U.S. 349, 361 (1993) ("a foreign state's exercise of the power of its police has long been understood for purposes of the restrictive[1] theory as peculiarly sovereign in nature")); see also Crum v. Kingdom of Saudi Arabia, 2005 WL 3752271 (E.D. Va. Jul. 13, 2005).

Plaintiff's employment activities were substantially identical to those of plaintiffs in these precedents where this Court found no exceptions to the FSIA immunity apply. Moreover, as set forth

---

[1] The Supreme Court explains the commercial activity exception FSIA is a "'restrictive' theory" where a "state engages in commercial activity under that theory where it exercises **only** those powers that can also be exercised by private citizens, rather than those powers peculiar to sovereigns." (emphasis added) Saudi Arabia v. Nelson, 507 U.S. 349, 361 (1993) (citing Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 612, 112 S.Ct. 2160, 2165, 119 L.Ed.2d 394 (1992)).

2

in Defendant's moving papers, Plaintiff had additional duties including that of protecting national secrets as well, akin to protecting the dignitaries' physical well-being. DSMF ¶ 54-68, 72-75.

Assuredly, the FSIA immunity does not bar Plaintiff's claims entirely. Should Plaintiff wish to advance his claims, the proper venue for resolution is in the courts in the Republic of Korea.

### B. PROCEDURAL ISSUE PRECLUDES AWARD OF ANY DAMAGES AT THIS STAGE

The parties filed their respective motion for (partial) summary judgment in accordance with Fed. R. Civ. P. 56. Plaintiff, apparently conceding there are no facts upon which to move for an award of damages, moved for partial summary judgment on the issue of liability, only. Moreover, should the Court determine the parties' supplemental briefing is necessary to resolve Plaintiff's motion for partial summary judgment, it necessarily follows that the material facts set forth in Plaintiff's initial submissions are insufficient. Hence, Plaintiff's motion must be denied.

Neither Plaintiff's moving papers nor his supplemental brief filed January 13, 2023 set forth any facts that suffice to support a Court finding concerning Plaintiff's compensable working hours or his rates, which are necessary and critical for calculating Plaintiff's alleged damages. Plaintiff also does not authenticate any documents submitted with his January 13, 2023 supplemental brief or even translate most documents submitted therewith.

Indeed, as set forth herein, Defendant disputes the majority of Plaintiff's assumptions of material fact in his January 13, 2023 supplemental brief, as well as the translations of the documents submitted therewith. The facts in dispute are set forth below.

For the foregoing reasons, Defendant respectfully submits the Court must not enter a money judgment in favor of Plaintiff at this stage due to the slew of procedural and substantive defects. Critically, Plaintiff, perhaps aware of these defects, did not seek damages in his initial submissions. This notwithstanding, Plaintiff's supplemental briefing still fails to submit evidence in an admissible form – let alone undisputed material facts as required by L. Civ. R. 56.1 and FRCP 56.

3

## II.     RELEVANT DISPUTED FACTS

Before delving into the analysis of Plaintiff's potential or *approximate* damages, it is imperative to understand Plaintiff's working schedule and Defendant's pay practices. This section outlines the same, with reference to the documents Plaintiff filed as exhibits on January 13, 2023.

**A.  Plaintiff's Work Schedule and Recording of "Off-Schedule" Hours**

Plaintiff was scheduled to work a total of eight (8) hours per day, with a one-hour lunch break, and with the understanding that he may be required to work "off-schedule". Ex. 18, § 4. Plaintiff ratified his understanding of the same each year. Exs. 17-30, § 4. To that effect, the Mission considered any hours in excess of nine (9) hours (including the aforementioned one-hour break) on a given day as "off-schedule" hours. See generally, Plaintiff's Exhibit D, submitted Jan. 13, 2023 ("P-Ex. D#2"). For days on which Plaintiff worked only his regular 8-hour shift, he did not record his hours on the "Off-Schedule Verification Ledger". See generally, id.; Plaintiff's Exhibit C, filed Jan. 13, 2023 (P-Ex. C#2); Ex. 40 (concerning correct translation).

Importantly, Plaintiff was tasked with recording his own "off-schedule" hours, as exhibited P-Ex. D#2. There, he recorded any alleged hours in excess of nine (9) hours on a given day as "off-schedule" hours and, where he worked less than nine (9) hours, recorded negative "off-schedule" hours. See P-Ex. D#2. For instance, on July 31, 2019, Plaintiff recorded that he worked five (5) hours from 7:20 am through 12:20 pm and further recorded that he worked "–4:00" (negative) hours of "off-schedule" hours. See id. at ROKPM0075. Unfortunately, this practice of recording negative "off-schedule" hours began only in April 2019. See generally, id.

**B.  Plaintiff Took His One-Hour Lunch Breaks**

That Plaintiff regularly took his lunch breaks is also evident from P-Ex. D#2. When Plaintiff takes a day off, he would subtract only eight (8) hours from his "off-schedule" hours – not nine (9). See e.g., id. at ROKPM0075 (July 25th and 26th). If his day ended before lunchtime around noon,

4

Plaintiff would subtract his work hours from eight (8) – as opposed to nine (9) – hours, because he did not take his meal break. See e.g., ibid. (July 24th). Where his day ended after lunchtime (i.e., after he takes his one-hour break), he would subtract from nine (9) hours. See e.g., ibid. (July 30th and 31st).

### C. Plaintiff's Records Contain Material Errors

Plaintiff relies heavily on P-Ex. D#2, but this purported Off-Schedule Verification Ledger is drafted by Plaintiff and contains many errors. For instance, for September 20, 2019, Plaintiff alleges he worked only six (6) hours from 5:00 pm through 11:00 pm, but only recorded "–1:00" for his "off-schedule" hours when the correct computation results in "–2:00" (negative) "off-schedule" hours. See P-Ex. D#2, ROKPM0073. In another instance, Plaintiff recorded "8:00" hours of "off-schedule" hours on a Saturday, but he only worked seven (7) hours total from 8:40 am to 3:40 pm that day. See id., ROKPM0075. Additionally, Plaintiff alleges eleven (11) hours of "off-schedule" hours on Friday, August 8, 2019, despite having worked only those eleven hours, without subtracting his scheduled hours. See id., ROKPM0074. There are other errors that are omitted in this brief to comply with the Court-imposed page limit.

### D. Plaintiff's "Off-Schedule" Hours are Incongruent to "Overtime" Hours

The Court is respectfully referred to Exhibit 40, which explains the definition of "off-schedule" hours in the context of the laws of the Republic of Korea.[2] "Off-schedule hours", in the context of Korean law, means exactly what Defendant asked Plaintiff to record: worked hours in excess of 9 hours in a given workday. This is different from "overtime" as defined in U.S. law.

As such, Plaintiff did not record his "overtime" hours as defined in the FLSA and the NYLL. The Court cannot simply add up "off-schedule" hours to calculate "overtime" hours.

---

[2] Exhibit 40 is designed to clarify the translation of the title of P-Ex. D#2. The declarant is not an attorney, but references and translates the plain text of relevant Korean laws.

5

Consequently, Plaintiff's alleged damages, calculated by adding all the "off-schedule" hours, conflates "off-schedule" with "overtime" hours and is thus patently incorrect and inapposite.

E. **Plaintiff's Wage Rates**

The employment contract between the parties unambiguously sets forth the wages Plaintiff received: $1,900 per month plus $50 raise for each year of service.[3] Exs. 17-30, § 5. Any benefits provided to Plaintiff in the form of housing and health insurance support should not be considered Plaintiff's wages, as those are mere substitutes for lodging and health insurance benefits that a U.S. employer would provide in non-monetary form. The Mission provided said benefits in cash-equivalent form only because it was unable to provide such benefits in any other form.

Moreover, Plaintiff understood he may be required to work outside of his scheduled hours. See e.g., Ex. 22, § 4 ("The Employee shall comply with any request to work during off-schedule hours…"). Hence, Plaintiff also understood his monthly salary also covers his regular wages for his "off-schedule hours", and he received additional "off-schedule" wages. As such, assuming *arguendo* U.S. law applies, Plaintiff's regular wage rate should be calculated by dividing his weekly wages by his total weekly hours, using the fluctuating workweek method.

After adjusting for Plaintiff's errors in drafting P-Ex. D#2 and correctly allocating his meal breaks, Defendant generated and herewith submits a spreadsheet outlining Plaintiff's recorded hours for each day. This spreadsheet also calculates Plaintiff's earned wages assuming *arguendo* the FLSA and the NYLL apply here.

F. **Facts Alleged by Plaintiff And Documents Submitted in Support Thereof Are Not Admissible Evidence**

Plaintiff asserts various facts in his January 13, 2023 submission with no citation to the record whatsoever and without providing any basis therefor. Moreover, as set forth above, Plaintiff

---

[3] Plaintiff's monthly salary was reduced to $1,710 in 2020. Exs. 27-30, § 5.

fails to authenticate his exhibits and, as such, fails to establish his exhibits are admissible evidence. Furthermore, Plaintiff's submission suffers from other inexcusable evidentiary defects outlined in Defendant's opposition to Plaintiff's motion for partial summary judgment.

For the foregoing reasons, Plaintiff cannot - at least at this stage - establish there are no genuine issues of fact precluding an award of damages, particularly where Plaintiff's own submissions are so demonstrably unreliable. Defendant respectfully submits the Court must view the record in the light most favorable to the non-movant and, as such, cannot assume Plaintiff's exhibits are admissible over the multitude of critical evidentiary defects raised by Defendant.

### III.   APPLICABLE LAWS

Aside from the FISA jurisdictional issues, the Court must also determine whether U.S. law applies to Defendant. Defendant, indisputably a government employer, is expressly excluded from certain provisions of the NYLL and its supporting regulations. The NYLL defines both an "employee" and "employer" in various sections, including in NYLL § 190 and 12 N.Y.C.R.R. § 142.

#### A. Defendant is Not Required to Provide Wage Notices and Wage Statements

Section 190 in Article 6 of the NYLL defines an "employer" as:

> "Employer" includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service. The term "employer" shall not include a governmental agency.

NYLL § 190(3) (emphasis added). The parties do not dispute that Defendant is a sovereign entity – a subdivision of the government of the Republic of Korea. As such, Defendant is not required to comply with § 195 and Plaintiff's claims for statutory damages pursuant to § 198 fail.

#### B. Defendant is Not Required to Pay Spread-of Hours Premium

12 N.Y.C.R.R. § 142 also expressly excludes government employers from its ambit:

> *Employee* also does not include any individual employed by a Federal, State or municipal government or political subdivision thereof.

7

12 N.Y.C.R.R. § 142-3.12(b) (emphasis added).

Importantly, the statutory language of the NYLL does not require paying spread-of-hours premium; only its supporting regulations under 12 N.Y.C.R.R. §142-2.4 do. Since the sole authority requiring the payment of spread-of-hours premium expressly excludes government entities from its coverage, Defendant is <u>not</u> required to make any spread-of-hours payments.

## IV.   DAMAGE ANALYSIS

Defendant submits its analysis of Plaintiff's potential and approximate damages under the *assumption* the FLSA and the NYLL apply but under protest that they do not, and further that it is premature and improper for the Court to award any damages for, *inter alia*, lack of jurisdiction and disputes of material facts.

Submitted herewith is a spreadsheet showing the calculation of Plaintiff's approximate damages. Defendant's assumptions, which Defendant asserts are reasonable *assumptions* sufficient for calculating *approximate* damages in creating this spreadsheet, are explained below. This notwithstanding, Defendant steadfastly maintains there are unresolved disputes of material facts that preclude a determination by the Court on damages at this juncture.

### A.   Working Hours:

Defendant's damage calculations (Exs. 43 & 44) *assume* Plaintiff's entries on P-Ex. D#2 are accurate/correct. For regular workdays with no records, Plaintiff's scheduled hours were applied (blue text). Plaintif's lunch breaks are applied as discussed above.

### B.   Regular and Overtime Wage Rates

Since Plaintiff was paid monthly, his monthly salary is converted to a weekly salary as follows: (monthly salary) x 12 / 52. This method is identical to the one used by Plaintiff.

However, only the portion intended to be payment of <u>wages</u> – excluding the monetized lodging and health insurance benefits – is considered Plaintiff's monthly salary. His regular rate is

8

his weekly salary divided by his actual weekly hours, because Plaintiff agreed to his salary and further to "comply with any request to work during off-schedule hours," see e.g., Ex. 22, § 4. Where his regular rates are below New York's minimum wage,[4] the applicable minimum wage rate is used for Defendant's calculations. Overtime wage rates are calculated at 1.5 times that rate.

C. **Payment of Plaintiff's Overtime Wage**

As set forth in Defendant's moving papers, nearly every aspect of the Mission's activities must be pre-approved by the government headquarters in Seoul, South Korea. Because Plaintiff's "off-schedule" wages varied each month, each had to be separately approved. Due to delays in the approval process, Plaintiff's "off-schedule" wages were paid with a 2-month delay.

From July 2016 through October 2018, Plaintiff's monthly salary and "off-schedule" wages were recorded on P-Ex. A#2[5] and P-Ex. D#2, respectively. From November 2018 through April 2019, P-Ex. A#2 noted only the salary. For this period, Defendant was able to retrieve Plaintiff's "off-schedule" wages from a log of approval requests. From May 2019 through June 2021 both Plaintiff's salary and "off-schedule" wages were recorded on P-Ex. A#2.

From November 2018 through April 2019, the off-schedule wages paid to Plaintiff were:

| Nov. 2018 | Dec. 2018 | Jan. 2019 | Feb. 2019 | Mar. 2019 | Apr. 2019 |
|---|---|---|---|---|---|
| $1,564 | $1,225 | $1,298 | $1,062 | $1,003 | $1,018 |

D. **Liquidated Damages**

Plaintiff relies on their submissions made in support of their motion for partial summary judgment with respect to liquidated damages. Defendant likewise relies on their opposition to Plaintiff's motion, and reiterates only that Defendant had (and still has) a good faith belief that this

---

[4] This is because Defendant complied with the Korean prevailing minimum wage, which was 6,030 KRW (equivalent to 4.90 USD) in 2016 and 8,720 KRW (equivalent to 7.09 USD) in 2021.
[5] Plainiff's Exhibit A submitted January 13, 2023.

Court lacks jurisdiction over Defendant with respect to Plaintiff's employment and that Plaintiff was properly compensated in accordance with the laws of the Republic of Korea.

### E. Pre-Judgment Interest

Defendant generally agrees with Plaintiff's method of calculating pre-judgment interest. Applying Defendant's calculation of Plaintiff's potential and approximate total compensatory damages ($50,910.72), pre-judgment interest should be $18,503.61 ($50,910.72x1474x0.09/365).[6]

### V. CONCLUSION

For all the foregoing reasons, Defendant respectfully submits this Court lacks jurisdiction to award any damages in favor of Plaintiff. Moreover, even if the Court finds Plaintiff managed to situate his case into the FSIA's "restrictive" commercial-activity exception, genuine issues of material fact preclude summary judgment on the issue of damages at this stage.

This notwithstanding, should the Court find all the jurisdictional and procedural issues are resolved in Plaintiff's favor, the Court should still find that Defendant is not liable for statutory damages under NYLL § 198 or spread-of-hours premium under 12 N.Y.C.R.R. § 142-2.4.

And even if Plaintiff satisfies his burden with respect to all the jurisdictional thresholds and overcomes the procedural defects, Plaintiff is entitled to solely the unpaid minimum wages and overtime premium therefor, which totals $50,910.72, plus prejudgment interest.

Dated: February 3, 2023            Respectfully submitted,

                                                                               /s/ Joshua S. Lim
                                                                               Joshua S. Lim, Esq.
                                                                               Kim, Cho & Lim, LLC
                                                                               460 Bergen Boulevard, Suite 305
                                                                               Palisades Park, New Jersey 07650
                                                                               T: (201) 585-7400
                                                                               F: (201) 585-7422
                                                                               joshualim@kcllawfirm.com

---

[6] As of January 13, 2023, the date of Plaintiff's submission.